UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

Civil Case No.  26-cv-11908

**Jury Trial Demanded**

TIESHA MARIE JOHNSON

        Defendant.

_____ /

## COMPLAINT

The United States of America brings this action against Tiesha Marie Johnson ("Johnson") to recover treble damages and civil penalties for violations of the False Claims Act, 31 U.S.C. §§ 3729-3733 (the "FCA"), and to recover damages and other monetary relief under the common law and equitable theories of unjust enrichment and payment by mistake based upon Johnson's unlawful receipt of funds from the Paycheck Protection Program and Economic Injury Disaster Loan program.  For its Complaint, the United States alleges as follows:

## INTRODUCTION

1.    In March 2020, as the Nation dealt with the unfolding COVID-19 crisis, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act to provide emergency financial assistance to the millions of Americans suffering

1

from the economic fallout related to the COVID-19 pandemic.  The CARES Act authorized government-backed loans to eligible small businesses through two major programs—the Paycheck Protection Program and Economic Injury Disaster Loan program.  The overall goal of these two programs was to help small businesses temporarily cover payroll costs and certain other eligible expenses.

2.       Johnson formerly worked as an investigator for the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") in Detroit, Michigan.  While working full-time for the ATF, Johnson fraudulently obtained federal loan funds from the Paycheck Protection Program and Economic Injury Disaster Loan program using, among other things, a fictitious business purportedly called "Hope After Heartbreak."

3.       Specifically, Johnson knowingly falsified the number of employees, payroll expenses, and revenue for Hope After Heartbreak on loan applications and other documents submitted to the U.S. Small Business Administration ("SBA") and third-party lenders working on the SBA's behalf, to obtain loan funds that she was not eligible to receive.  Johnson subsequently misused those loan proceeds for her own personal benefit, in violation of both the FCA and federal common law.

4.       As a result, Johnson not only committed fraud under the FCA, but also unjustly enriched herself at the expense of the United States and the many other small businesses that legitimately needed help during the COVID-19 pandemic.

2

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1367(a), because this is a civil action by the United States that arises under both the FCA and federal common law, and all claims in the action form part of the same case or controversy.

6.      This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a), because Defendant has transacted business, and committed acts proscribed by the FCA, within the Eastern District of Michigan.

7.      Venue is proper in the Eastern District of Michigan under 28 U.S.C. §§ 1391(a)-(c), 1395(a), and 31 U.S.C. § 3732(a), because Defendant is located, resides, transacted business, or committed the acts at issue in this district.

## PARTIES

8.      Plaintiff United States of America brings this action on behalf of the SBA, which guaranteed loans under the Paycheck Protection Program and funded loans and advances under the Economic Injury Disaster Loan program.

9.      Defendant Tiesha Marie Johnson is a resident of and has transacted business in Oakland County, Michigan.

## PAYCHECK PROTECTION PROGRAM

10.     The CARES Act authorized forgivable loans to small businesses for payroll, mortgage interest, rent/lease, utilities, and other business-related expenses

through the Paycheck Protection Program ("PPP").  *See* CARES Act § 1102, Pub. L. No. 116-136, 134 Stat. 281, 286 (2020).

11.     To obtain a PPP loan, qualifying businesses submitted an SBA Form 2483 ("PPP Borrower Application Form") signed by an authorized representative of the business.  The PPP Borrower Application Form required the business—through its authorized representative—to acknowledge the program rules and make certain affirmative certifications regarding its eligibility to obtain the PPP loan funds.

12.     The PPP Borrower Application Form required applicants to, among other things, make the following good faith certifications and acknowledgments:

   a.     That the applicant was eligible to receive a PPP loan under the rules in effect at the time the application was submitted;

   b.     That the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, or other covered costs under the PPP;

   c.     That if the funds were knowingly used for unauthorized purposes, the federal government may find the individual legally liable for such charges as fraud; and

   d.     That the information provided in the application and in all supporting documents and forms was true and accurate in all material respects.

13.     The PPP loan amount was determined by the number of employees employed by the business and the business's average monthly payroll costs.

14.     PPP applicants submitted the PPP Borrower Application Form to third-party lenders (*i.e.,* financial institutions) that were authorized to process applications and supporting documents on the SBA's behalf.  Lenders issued PPP loans using their own funds, which the SBA fully guaranteed.  *See* 15 U.S.C. § 636(a)(36)(B).

15.     In addition, the SBA paid lenders a statutory fee to process PPP loans on its behalf.  *See* 15 U.S.C. § 636(a)(36)(P).

### ECONOMIC INJURY DISASTER LOAN PROGRAM

16.     The Small Business Act authorizes the SBA to provide economic injury disaster loan ("EIDL") relief to small businesses that have suffered a substantial economic injury because of a disaster.  *See* 15 U.S.C. § 636(b)(2).

17.     Congress declared the COVID-19 pandemic a "disaster" and authorized the SBA to provide EIDL relief to eligible small businesses.  *See* CARES Act, Pub. L. No. 116-123, 134 Stat. 146, 147 (2020) (stating "coronavirus shall be deemed to be a disaster" under the Small Business Act).

18.     Substantial economic injury generally meant that the business was "unable to meet its obligations as they mature or to pay its ordinary and necessary operating expenses."  13 C.F.R. § 123.300(a)(1).

19.     To obtain EIDL relief, eligible businesses submitted an application ("EIDL Loan Application Form") directly to the SBA.  The EIDL Loan Application Form required the business to, among other things, declare, under the penalty of perjury, its gross revenue and cost of goods for the preceding twelve months, along with its number of employees as of January 31, 2020.

20.     The EIDL Loan Application Form contained the following clear and unambiguous warning:

> "Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). **In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including**, but not limited to: 1) fines and imprisonment, or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) **treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729** . . ." (emphasis supplied)

21.     The EIDL principal amount depended on how much financial impact the business had experienced and the company's financial needs.  But unlike the PPP, EIDL loans were generally not eligible for forgiveness and had to be repaid.

22.     In addition, EIDL applicants could also request up to $10,000 in funding from the SBA that did not need to be repaid through EIDL Advance.  EIDL applicants could receive $1,000 per employee (maximum $10,000) under EIDL Advance.

6

**THE FALSE CLAIMS ACT**

23.     The FCA is "used as the primary vehicle by the Government for recouping losses suffered through fraud." H.R. Rep. No. 660, 99th Cong., 2d Sess. 18 (1986).  To achieve that goal, the FCA imposes civil liability for a variety of deceptive practices involving government funds and property by making liable any person who (1) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A) or (2) "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(1)(B), among other things.

24.     Knowingly means that the person: (1) had actual knowledge of the information; (2) acted in deliberate ignorance of the truth or falsity of the information; or (3) acted in reckless disregard of the truth or falsity of the information.  *See* 31 U.S.C. §§ 3729(b)(1).  The person need not have acted with specific intent to defraud the United States to be liable under the FCA.  *Id.*

25.      Persons who submit or cause the submission of false claims are liable for treble the amount of the Government's losses because of such conduct, plus civil penalties.  *Id.* § 3729(a).

26.     By enacting the False Claims Act, Congress expressed its desire "to reach all types of fraud, without qualification, that might result in financial loss to the government."  *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968).

**FACTUAL ALLEGATIONS**

27.     On April 9, 2020, Johnson applied for an EIDL loan on behalf of "Hope After Heartbreak" from the SBA.  On the EIDL Loan Application Form, Johnson falsely stated the business had 12 employees.

28.     In reality, however, Hope After Heartbreak was a fictitious business with zero employees.

29.     As a result of Johnson's false statements, the SBA approved an EIDL Advance for Hope After Heartbreak of $10,000.00 ("EIDL Advance").

30.     Moreover, Johnson also reported on the EIDL Loan Application Form that Hope After Heartbreak had no gross revenue and no cost of goods for the twelve months prior to January 31, 2020.  Accordingly, on May 23, 2020, the SBA notified Johnson that it had denied her EIDL loan application because she had not established substantial economic injury.

31.     Even though the SBA denied the underlying EIDL loan, however, Johnson nonetheless fraudulently obtained $10,000 in EIDL Advance funds because Johnson misrepresented the number of Hope After Heartbreak's employees.

32.     On May 5, 2020, Johnson applied for a PPP loan on behalf of "Hope After Heartbreak" from a financial institution ("Bank 1").  But this time, Johnson falsely stated on the PPP Borrower Application Form that Hope After Heartbreak had four employees and an average monthly payroll of $4,583.00.

33.     As a result of Johnson's false statements, Bank 1 approved, and the SBA guaranteed, a first-draw PPP loan for Hope After Heartbreak for $11,457.00 ("First Draw PPP Loan").  The SBA also paid Bank 1 a lender fee of $572.85.

34.      Johnson knowingly obtained the First Draw PPP Loan even though Hope After Heartbreak was a fictitious business and/or the business was ineligible for the full First Draw PPP Loan amount of $11,457.00.

35.     Johnson knowingly used the First Draw PPP Loan funds for her own personal benefit and/or unauthorized purposes.

36.     Johnson did not repay the First Draw PPP Loan to Bank 1 or obtain loan forgiveness from the SBA.  The SBA purchased the guaranteed portion of the First Draw PPP Loan from Bank 1, thereby causing a loss to the United States of at least $12,259.56, which includes $11,457.00 in principal and $229.71 in accrued interest, plus $572.85 in lender fees paid to Bank 1.

37.     On May 18, 2021, Johnson applied for a second PPP loan from Bank 1, but this time under the business name "Tiesha Johnson" instead of Hope After Heartbreak.

38.     On the second PPP Borrower Application Form, Johnson falsely stated that Tiesha Johnson's (i.e., the business's) gross income from 2019 was $63,450.00. During 2019, however, Johnson was employed full-time as an ATF investigator.

39.     As a result of Johnson's false statements, Bank 1 approved, and the SBA guaranteed, a second-draw PPP loan for Tiesha Johnson for $13,218.00 ("Second Draw PPP Loan").  The SBA also paid Bank 1 a lender fee of $2,500.00.

40.     Johnson knowingly obtained the Second Draw PPP Loan even though Tiesha Johnson was a fictitious business and/or the business was ineligible for the full Second Draw PPP Loan amount of $13,218.00.

41.     Johnson knowingly used the Second Draw PPP Loan funds for her own personal benefit and/or unauthorized purposes.

42.     Johnson did not repay the Second Draw PPP Loan or obtain loan forgiveness.  The SBA purchased the guaranteed portion of the Second Draw PPP Loan from Bank 1, thereby causing a loss to the United States of at least $15,939.02, including $13,218.00 in principal and $221.02 in accrued interest, plus $2,500.00 in lender fees paid to Bank 1.

43.     On August 28, 2024, Johnson pled no contest to three felony counts of obtaining funds under False Pretenses Loan, in violation of Mich. Comp. Laws § 750.218(4)(a), related to the EIDL Advance, First Draw PPP Loan, and Second Draw PPP Loan.  *People v. Tiesha Marie Johnson*, Oakland County Circuit Court, Case Number 2024-288938-FH.

44.     Johnson was subsequently adjudicated guilty as a matter of law on the three felony counts of False Pretenses.  *See People v. Franklin*, 828 N.W.2d 61, 65

(Mich. Ct. App. 2012).  Johnson was sentenced to probation and ordered to pay restitution.  Upon information and belief, Johnson has not paid any restitution.

## COUNT I: FALSE OR FRAUDULENT CLAIMS

## VIOLATION OF THE FALSE CLAIMS ACT
(31 U.S.C. § 3729(a)(1)(A))

45.    The United States incorporates by reference the allegations contained in paragraphs 1 through 44.

46.    Defendant Johnson knowingly presented, or caused to be presented, false or fraudulent claims to the United States for payment or approval.  Specifically, Defendant submitted PPP and EIDL applications in which Defendant (1) falsely inflated the number of employees, payroll expenses, and revenue; and (2) falsely certified that she was eligible for the PPP loans and EIDL advances and loans, and that the funds would be used for authorized purposes.

47.    The United States suffered damages as a result of Defendant's false or fraudulent claims.

48.    Defendant is liable to the United States for treble damages under the FCA, plus a civil penalty of $14,308 to $28,619 (as revised by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 C.F.R. Part 85) for each violation of 31 U.S.C. § 3729(a)(1)(A).

## COUNT II: FALSE STATEMENTS

### VIOLATION OF THE FALSE CLAIMS ACT
(31 U.S.C. § 3729(a)(1)(B))

49.     The United States incorporates by reference the allegations contained in paragraphs 1 through 44.

50.     Defendant Johnson knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim.  Specifically, Defendant submitted PPP and EIDL applications in which Defendant (1) falsely inflated the number of employees, payroll expenses, and revenue; and (2) falsely certified that she was eligible for the PPP loans and EIDL advances and loans and that the funds would be used for authorized purposes.

51.      The United States suffered damages as a result of Defendant's false records or statements.

52.     Defendant is liable to the United States for treble damages under the FCA, plus a civil penalty of $14,308 to $28,619 (as revised by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 C.F.R. Part 85) for each violation of 31 U.S.C. § 3729(a)(1)(B).

## COUNT III: REVERSE FALSE CLAIM

### VIOLATION OF THE FALSE CLAIMS ACT
(31 U.S.C. § 3729(a)(1)(G))

53.     The United States incorporates by reference the allegations contained in paragraphs 1 through 44.

54.     Defendant Johnson knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the United States, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States.  Specifically, Defendant failed to repay the EIDL Advance, First Draw PPP Loan, and Second Draw PPP Loan even though Defendant knew or should have known she was ineligible for those funds.

55.      The United States suffered damages as a result of Defendant's failure to repay the EIDL Advance, First Draw PPP Loan, and Second Draw PPP Loan.

56.     Defendant is liable to the United States for treble damages under the FCA, plus a civil penalty of $14,308 to $28,619 (as revised by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 C.F.R. Part 85) for each violation of 31 U.S.C. § 3729(a)(1)(G).

## COUNT IV: UNJUST ENRICHMENT

57.     The United States incorporates by reference the allegations contained in paragraphs 1 through 44.

58.     Defendant Johnson obtained PPP and EIDL funds in amounts exceeding what Defendant knew or should have known she was actually entitled to receive.

59.     Defendant retained or used monies from the United States from the PPP and EIDL programs to which Defendant was not entitled and was therefore unjustly enriched.

60.     By directly or indirectly obtaining federal funds from the SBA to which she was not entitled, Defendant was unjustly enriched at the expense of the United States and is liable to account and pay to the United States an amount to be determined at trial.

## COUNT V: PAYMENT BY MISTAKE

61.     The United States incorporates by reference the allegations contained in paragraphs 1 through 44.

62.     The United States paid and/or guaranteed money to Defendant Johnson through the EIDL Advance, First Draw PPP Loan, and Second Draw PPP Loan, based on a mistaken understanding of fact that Defendant was eligible for those funds and had otherwise complied with all federal rules and regulations governing the PPP and EIDL programs.

63.     The United States' mistaken understandings of fact were material to its decision to approve the EIDL Advance and guarantee the First Draw PPP Loan and Second Draw PPP Loan.

64.     The United States, acting in reasonable reliance on the truthfulness of the statements contained in Defendant Johnson's EIDL and PPP loan and advance applications, approved the EIDL Advance and guaranteed the First Draw PPP Loan and Second Draw PPP Loan to which Defendant was not entitled.

65.     The United States suffered damages as a result of mistaken payments to Defendant Johnson, and Defendant is liable to the United States for the full amount of the EIDL Advance, First Draw PPP Loan, and Second Draw PPP Loan plus any other amounts to be determined at trial.

## PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Plaintiff United States respectfully requests the Court enter judgment in favor of the United States and against Defendant Johnson as follows:

a.     On Counts I, II, and III (False Claims Act), against Defendant for the amount of the United States' damages, trebled as required by law, plus such civil penalties in an amount between $14,308 and $28,619 for each and every false claim as allowed by law;

b.     On Count IV (Unjust Enrichment), against the Defendant for the damages sustained and/or amounts by which Defendant retained monies received

or benefitted from reimbursements paid by the United States to which Defendant was not entitled, plus interest, costs, and expenses;

      c.     On Count V (Payment by Mistake), against the Defendant for an amount equal to the money paid or guaranteed by the United States to Defendant, or on Defendant's behalf, to which Defendant was not entitled, plus interest, costs, and expenses; and

      d.     Granting such other relief as the Court may deem just and proper.

The United States further demands a trial by jury of all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

s/ Anthony Gentner
ANTHONY GENTNER (P79535)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9778
anthony.gentner2@usdoj.gov

Dated: June 9, 2026

16